IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTEN SMALL, | : | CIVIL ACTION |
| | : | |
| | : | DOCKET NO. 02-CV-3744 |
| v. | : | |
| | : | |
| FIRST RELIANCE STANDARD | : | |
| LIFE INSURANCE COMPANY; | : | |
| E.M. INDUSTRIES, INC., AND | : | |
| E.M. SCIENCE | : | |

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant First Reliance Standard Life Insurance Company ("First Reliance Standard"), hereby moves the court to enter judgment in its favor, and in support thereof, avers as follows:

1. First Reliance Standard provided long term disability coverage to eligible employees of EM Industries, Inc. under group policy No. LSC 063591. (RSL 111)[1].

2. The long term disability policy defines "Total Disability" according to the claimant's class of employment. The definition of total disability applicable to plaintiff is defined as follows:

> "Totally Disabled" and "Total Disability" mean, with respect to Class II and III, that as a result of an Injury or Sickness:
>
> (1) During the Elimination Period and for the first 60 months for which a monthly benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
>
>     (a) "Partially Disabled" and "Partial Disability" mean that as a result of Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a

---

[1] All "RSL" references are to the administrative record, a true and correct copy of which is being filed with the Clerk

>   part-time basis or some of the material duties on a full-time basis. An Insured who is partially disabled will be considered totally disabled, except during the elimination period;
>
>   (b)     "Residual Disability" means being partially disabled during the elimination period. Residual Disability will be considered Total Disability; and
>
>   (2)     After a monthly benefit has been paid for 60 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the insured's education, training or experience will reasonably allow. We consider the Insured "Totally Disabled" if due to an Injury or Sickness. He or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.

(RSL 116).

3.      Plaintiff was employed by EM Industries, Inc. as a Technical Web Specialist until December 1, 1998 when she claims that she became totally disabled. (RSL 145).

4.      On the claim form Ms. Small stated that she was disabled due to "hypersomnia and periodic leg disorder movement." (RSL 145).

5.      In support of the disability claim, plaintiff provided First Reliance Standard with a Physician's Statement completed by Wendell A. Grogan, M.D. on June 3, 1999. (RSL 150-151).

6.      Dr. Grogan diagnosed plaintiff as having periodic limb movements at sleep and hypersomnia. (RSL 150).

7.      Dr. Grogan described the symptoms plaintiff was experiencing due to these conditions as "severe sleepiness, non-restorative sleep." (RS 150).

8.      On the Physician's Statement completed by Dr. Grogan, he stated that in an 8 hour work day, plaintiff was capable of sitting, standing and walking for 1 to 3 hours each. (RSL 151).

960383 v.1

9. Dr. Grogan indicated on the form that in an 8 hour day, plaintiff was capable of lifting and carrying at a sedentary level. (RSL 151).

10. Dr. Grogan stated that plaintiff had not achieved maximum medical improvement, however, he believed that plaintiff would achieve this level of improvement within twelve months. (RSL 151).

11. Dr. Grogan stated that at the time of maximum medical improvement, plaintiff would be fully recovered. (RSL 151).

12. After receiving and reviewing medical records pertaining to Ms. Small, on January 13, 2000, First Reliance Standard notified plaintiff that her claim for benefits was approved through June 3, 1999. (RSL 74-75).

13. On February 11, 2000, plaintiff requested a review of First Reliance Standard's decision to discontinue benefits as of June 3, 1999. (RSL 68-69).

14. In support of her appeal, plaintiff provided First Reliance Standard with a February 2, 2000 report from Dr. Grogan. In the letter report addressed to Ms. Small, Dr. Grogan stated that plaintiff's "night time sleep has become much better." (RSL 72). He also stated that she "no longer experience[s] the degree of sleep disruption that was seen before starting medications." (RSL 72). However, Dr. Grogan explained that Ms. Small continued to have "severe daytime sleepiness." (RSL 72). Based on the daytime sleepiness, Dr Grogan recommended that plaintiff not work "until we can make more inroads into the familial hypersomnia syndrome." (RSL 72).

15. On February 2, 2000, the same date on which Dr. Grogan prepared his letter to plaintiff, he sent a report to Dr. Pileggi. (RSL 45).

960383 v.1

16. Dr. Grogan stated that plaintiff's therapy was "successful" in allowing her to "sleep soundly through the night" from 10:00 p.m. to 8:00 a.m.  (RSL 45).

17. Dr. Grogan started plaintiff on Adderall and asked her to follow-up in a month to review her treatment.  (RSL 45).

18. Dr. Grogan's report from Ms. Small's visit on March 6, 2000, confirms that the additional medication significantly improved plaintiff's remaining symptoms.  (RSL 43).

19. Plaintiff told Dr. Grogan that she was "able to stay awake from about 7:00 a.m. to 8:00 p.m." and "generally feels alert during that time period."  (RSL 43).

20. Dr. Grogan stated that "Clonopin continues to keep her other symptoms under control."  (RSL 43).

21. On May 22, 2000, Dr. Grogan completed the form at the request of First Reliance Standard.  Approximately one year earlier when he completed a similar form, Dr. Grogan stated that plaintiff could only stand, sit, walk and drive for one to three hours each in an 8 hour work day.  (RSL 27).

22. Dr. Grogan stated that plaintiff was *continuously* capable of sitting, standing, walking and performing various other activities described on the form in an 8 hour work day.  (RSL 57).

23. Dr. Grogan stated that plaintiff was now capable of exerting herself at a light level.  (RSL 57).

24. According to Dr. Grogan, she should "never" drive.  (RSL 57).

25. Plaintiff's occupation did not involve driving.  (RSL 160).

26. On June 21, 2000, First Reliance Standard responded to plaintiff's appeal.  (RSL 32).

960383 v.1

27. First Reliance Standard informed plaintiff that based on the additional information, it was reversing its earlier decision that plaintiff was not entitled to benefits beyond June 3, 1999. (RSL 32).

28. Based on the reports from Dr. Grogan, First Reliance Standard concluded that additional benefits would be payable through March 6, 2000, the date of Dr. Grogan's report. (RSL 34).

29. The heightened arbitrary and capricious standard of review applies to the decision to discontinue benefits. *See Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 389 (3d Cir. 2000).

30. While the court may look to outside evidence on whether there is a conflict of interest, in reviewing the decision of the Plan the court may only look to the record which "consists of that evidence that was before the administrator when he made the decision being reviewed." *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 440 (3d Cir. 1997). *See also Kelly v. Connecticut General Life Insurance Company,* 2003 WL 22795648 (E.D. Pa. 2003) (refusing to consider the ruling from the Social Security Administration which was made after the defendant affirmed the denial of benefits and which was not contained in the administrative record).

31. First Reliance Standard's decision is supported by substantial evidence and should be affirmed.

WHEREFORE, defendant First Reliance Standard Life Insurance Company respectfully requests that the court enter judgment in its favor.

                RAWLE & HENDERSON LLP

                By:_____/s/_____
                      Joshua Bachrach, Esquire
                      Heather J. Holloway, Esquire
                      Attorneys for Defendant
                      First Reliance Standard Life
                      Insurance Company
                      The Widener Building
                      One South Penn Square
                      Philadelphia, PA 19107
                      (215) 575-4261

Date:   April 2, 2004

960383 v.1