IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTEN SMALL<br><br>v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY, et al. | Civil Action No. 02-CV-3744 |

**DEFENDANTS' SUPPLEMENTAL BRIEF ON THE
SLIDING SCALE AND THE APPLICABLE STANDARD OF
REVIEW PURSUANT TO THE DECEMBER 17, 2004 ORDER**

I.  Introduction

In accordance with this Court's December 17, 2004 Order, defendants hereby file this brief to address the question of "where on the 'sliding scale' [this Court's] heightened arbitrary and capricious standard of review [of First Reliance Standard Life Insurance Company's (First Reliance Standard) determination should] rest." (Dkt. No. 32). This Court agreed to consider extrinsic evidence on this subject, namely the testimony of Dorothy Winston, the testimony of Karen McGill and a June 5, 2004 office visit note issued by Dr. Grogan[1]. Prior to the trial of this matter, First Reliance Standard reserved its objection to factually-based evidence sought through the testimony of Dorothy Winston and through review of the office note of Dr. Grogan[2], based on its

---

[1] The December 17, 2004 Order references testimony of Dr. Grogan; however, Dr. Grogan has not testified by deposition, in court or in any other proceeding under oath. The referenced office note was not submitted to First Reliance Standard during the appeal of plaintiff's claim and therefore is not part of the Administrative Record.

[2] The basis for First Reliance Standard's position was fully argued during the hearing prior to the trial in this matter and also during closing argument. First Reliance Standard also fully briefed its objections in its Motion for Summary Judgment (Dkt. No. 13), Response to Plaintiff's Cross Motion for Summary Judgment (Dkt. No. 16), Response to Plaintiff's Supplemental Brief (Dkt. No. 20) and its Motion in Limine (Dkt. No. 27).

1082668 v.1

position that such evidence is not the type of extrinsic evidence which may be considered on the issue of a conflict of interest.

First Reliance Standard now complies with this Court's order, addressing the impact of all evidence on the standard of review, without waiver of its previously stated objection. Based on all of the evidence submitted, this Court should find that First Reliance Standard's review process was not plagued by procedural irregularities, bad faith or otherwise influenced by an implied conflict of interest. Accordingly, this Court should allow a significant degree of deference to First Reliance Standard in accordance with the discretion granted to the company. The Court should move very little, if at all, down the sliding scale.

II.  Analysis

    A.  Testimony of Karen McGill

Karen McGill was produced as a defense witness, strictly on the issue of conflict of interest. Ms. McGill was not involved in the determination of plaintiff's claim and her testimony did not overlap with and could not be confused with testimony based on the facts in this case. Ms. McGill testified that the May 13, 2003 version of the policies and procedures manual, on which plaintiff relied was not in effect at the time that First Reliance Standard rendered its determination. However, she did have knowledge of the procedures in effect at the time Ms. Small's claim was decided. Her testimony was significant, in that it addressed several allegations of procedural irregularities raised by plaintiff.

According to Ms. McGill, it was the policy of First Reliance Standard for its appeal examiners to consider all evidence contained within the claim file. To the extent

that plaintiff raised questions regarding the qualifications of the medical staff who reviewed the medical documentation in this file, Ms. McGill further testified that it was expected that a member of the medical staff who received a file that he or she did not feel competent to address would have the file reassigned. Further, to the extent that plaintiff raised issues regarding the current company policy that the medical staff member involved in the review of the initial claim not be involved in the review of the file on appeal, Ms. McGill testified that the same policy was not in effect at the time of the review of Ms. McGill's claim. She testified that the change was required because of a change in the regulations governing ERISA[3], which went into effect after the appeal of plaintiff's claim was decided. Accordingly, contrary to the argument of plaintiff, review of this file by the same medical staff personnel during the claim review and appeal was not a procedural irregularity, a violation of First Reliance Standard's policies or violation of ERISA regulations.

Ms. McGill also testified regarding the application of the Recurrent Disability policy provision, as a matter of company policy. According to Ms. McGill, in the event that a claimant was no longer disabled under the terms of a policy which contained this provision, the claimant would be expected to return to work. In the event that the claimant returned to work but within six months of their return to work regressed to the point of disability, the claimant would be returned to disabled status without a requirement to satisfy the elimination period[4] again. In the event that the claimant did not return to work, coverage would end and later regression of the claimant's condition

---

[3] Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1001, *et seq.*
[4] The Elimination Period applies to new claims and is a period during which the claimant must demonstrate total disability but during which benefits are not payable.

would not result in a return to benefits. Accordingly, First Reliance Standard's expectation that plaintiff would return to work as of March 6, 2000 was not a procedural irregularity, even if her condition later regressed[5].

B.     Testimony of Dorothy Winston

Ms. Winston was subpoenaed and was plaintiff's only witness. She was actively involved in the claim determination, having issued the final determination on plaintiff's appeal. While portions of her testimony went to the procedures of the company and the issue of the conflict of interest, other portions of her testimony were highly fact based and represented inappropriate extrinsic evidence, even on the issue of a conflict of interest. Accordingly, First Reliance Standard maintains its objection to Ms. Winston's testimony.

Consistent with the policies and procedures of First Reliance Standard, Ms. Winston testified that upon receipt of this claim on appeal, she reviewed the entire file. Ms. Winston further testified that plaintiff did not submit any additional documents, on appeal, except for her appeal letter and the three attachments thereto. Ms. Winston testified that she requested additional information from Dr. Grogan on May 19, 2000, including results of sleep study testing, medical records and an updated physical capacities form. While Dr. Grogan did submit additional documentation and medical records, he did not provide a copy of his June 5, 2000 report, upon which plaintiff now relies. Accordingly, Ms. Winston testified that this document is not part of the administrative record and was not considered. However, Ms. Winston testified that if this document were provided to First Reliance Standard prior to the issuance of its final

---

[5] First Reliance Standard did not consider additional evidence, not contained within the Administrative Record, which plaintiff claims demonstrates a deterioration of her condition and accordingly can not comment on whether plaintiff ever returned to a disabled state.

1082668 v.1                              4

determination, it would have been made part of the record and would have been considered, along with all other documents within the claim file.

Ms. Winston was questioned at length, regarding the June 3, 1999 report of Dr. Grogan. Specifically, she was questioned about the report and its indication that plaintiff was physically capable of performing sedentary level work. She was also questioned about the import of this report, given the nature of plaintiff's sleep disorder and the basis of her claim. Ms. Winston correctly testified that Dr. Grogan did indicate that plaintiff could perform sedentary level work as of June 3, 1999. She also correctly testified that the medical staff deemed plaintiff capable of performing sedentary level work as of June 3, 1999 and later extended that date to February 2, 2000 based on updated information. Plaintiff clearly disagrees with the conclusion that she was able to perform sedentary level work as of either June 3, 1999 or February 2, 2000, arguing that her condition prevented her from being able to perform the duties of her occupation. However, the fact that the initial claims examiner, the medical staff and perhaps even Ms. Winston made such a conclusion is not significant.

The fact remains that at the time of her review of plaintiff's claim (as opposed to the time of trial), Ms. Winston decided that plaintiff's benefits should not have been discontinued until March 6, 2000, when her medical records demonstrated that she was tolerating her medication, was alert and was functioning. This decision demonstrated reliance on the March 6, 2000 report of Dr. Grogan, which indicated that plaintiff could remain alert and *function* and not the June 3, 1999 report of Dr. Grogan which indicated that she could perform sedentary level work.

While Ms. Winston testified that there were some periods of time when she was concentrating on other aspects of her job and not actively working on plaintiff's claim and while Ms. Winston also testified that there were periods of time when she was awaiting receipt of additional documentation in order to fully consider plaintiff's claim, she testified that her determination was rendered in accordance with the deadlines established under the ERISA regulations. Plaintiff claims that a procedural irregularity existed because First Reliance Standard's determination was rendered only days before the deadline to render a determination and because she was not satisfied with the investigation that First Reliance Standard conducted. However, the mere existence of down time during the appeal period does not constitute a procedural irregularity. The ERISA regulations required a determination within 90 days of the appeal The determination was timely and was based on proper investigation of plaintiff's medical records.

Ms. Winston testified that in addition to requesting addition records and opinions from plaintiff's physicians, she reviewed all submissions that are part of the Administrative Record. Plaintiff claims that First Reliance Standard's reliance on the medical records that it received from plaintiff's physician was a procedural irregularity because First Reliance Standard did not do more to investigate the claim. She further argues that First Reliance Standard's failure to advise plaintiff of the documents it received during the appeal was a procedural irregularity because the letter denying plaintiff's claim indicated that she would have an opportunity to provide documentation that she believed would support her claim. The alleged procedural irregularities do not exist.

First Reliance Standard properly considered the medical records from Dr. Grogan, which revealed that plaintiff was no longer disabled on March 6, 2000 (and on the weeks surrounding that date). Additional investigation was not necessary. First Reliance Standard did not disagree with the medical record of March 6, 2000, rather it accepted the report. There was no inconsistency, with regard to plaintiff's ability to return to work on March 6, 2000 and therefore, no need for First Reliance Standard to engage any other investigative tools. It rendered a determination in accordance with the policy provisions and its determination was supported by the record.

In addition, plaintiff was given every promised opportunity to participate in the appeal process. Her appeal was accepted, as were the documents that she submitted with her appeal. As Ms. Winston testified, had plaintiff supplied additional documentation during the appeal process, it would have been considered, as well. Likewise, when appealing, if plaintiff had requested a copy of the Administrative Record, it would have been sent to her. She did not. Absent such a request, there is not duty on the part of First Reliance Standard to produce the record to plaintiff. *See Pane v. RCA Corp.*, 868 F.2d 631, 639 (3d. Cir. 1989).

First Reliance Standard did advise plaintiff of her ability to submit additional documentation when it denied her claim. It accepted additional documentation from her when submitted during the appeal. Further, on May 22, 2000, First Reliance Standard advised plaintiff that it was awaiting records from Dr. Grogan. If plaintiff wanted to know exactly what documents Dr. Grogan was sending, she could have made an inquiry to First Reliance Standard or to Dr. Grogan. She did not. This does not represent a

procedural irregularity on the part of First Reliance Standard but rather a lack of participation on the part of plaintiff.

Plaintiff's argument that she should have been advised of every document that First Reliance Standard received on appeal disregards the fact that the final determination must be made by First Reliance Standard. If First Reliance Standard is required to provide plaintiff with all documentation received on appeal and is required to provide her with an opportunity to comment on that information then the cycle will never end. First Reliance Standard will then be charged with the responsibility to investigate plaintiff's comments and plaintiff will again need to be allowed an opportunity to comment on the additional investigation. At some point, the cycle must end and First Reliance Standard must render its determination. In this case, the determination was made on June 21, 2000 after First Reliance Standard requested plaintiff's medical records and received what it reasonably believed to be all records. This request was not biased and did not solicit only information that was favorable to discontinuance of benefits.

C.   June 5, 2000 Report of Dr. Grogan

The factual content of the report of Dr. Grogan is not relevant to the issue of a conflict of interest or procedural irregularity. The import of the report, regarding the issue of conflict of interest, relates to plaintiff's allegation that First Reliance Standard selectively sought documentation of plaintiff's records. This issue can be addressed without actual review of the document, the content of which does nothing except to provide additional medical documentation that was not part of the record and to provide an opinion of Dr. Grogan, relating to plaintiff's condition which also was not a part of the record.

In *O'Sullivan v. Metropolitan Life Ins. Co.*, 114 F. Supp. 2d 303 (D. N.J. 2000), the Court addressed the issue of extrinsic evidence and its impact of the question of the standard of review. There is no authority for "looking beyond the administrative record when deferentially reviewing a plan administrator's factual determination that a claimant is ineligible for benefits." *Id.* at 309. "Exceptions to this general rule are appropriate where the evidence outside the administrative record is related to interpreting the plan or explaining medical terms and procedures relating to the claim." *Id.* at 310 (Citation omitted). The "Court is only precluded from receiving evidence to resolve disputed material facts, for instance, a 'fact the administrator relied on to resolve the merits of the claim itself.'" *Id* at 310 (Citation omitted). The Court continued, to explain the types of extrinsic evidence that may be received from a treating physician. *See Id.*

> Portions of [the physician's] deposition testimony were certainly within the knowledge of [the insurer] during its review of [the] claim. For example, testimony that [the insurer] did not contact [the physician] regarding his contradicting reports, testimony translating medical notes in the claim file, or testimony explaining medical terms used in documents within the file, would aid the Court in interpreting the documents before [the insurer] at the time of its decision, and may be considered by the Court.
>
> Other portions of [the physician's] testimony extend beyond the scope of the administrative record and may not be considered by the Court. Such testimony involving medical opinions not within the claim file, [the physician's] opinion as to whether [the claimant's] condition was pre-existing in 1996, or explanations by [the physician] supplementing his earlier reports may not be considered by this Court in its review of [the insurer's] decision.

*Id.* at 310-311. Notably, the standard of review in *O'Sullivan*, was also the heightened arbitrary and capricious standard of review, due to the insurer's implied conflict of interest which resulted from its dual role as insurer and decision maker. *See Id.*

When plaintiff's claim was appealed, First Reliance Standard requested additional medical records from Dr. Grogan. Specifically, First Reliance Standard requested sleep study reports, medical records and an updated physical capacities form from Dr. Grogan. These records were received but did not include the June 5, 2000 letter upon which plaintiff now relies.

Plaintiff alleges three procedural irregularities, relating to the acquisition of Dr. Grogan's medical records on appeal. First, plaintiff alleges that First Reliance Standard did not have authority to obtain additional medical records and that its continued investigation of the claim was a procedural irregularity. Second, plaintiff argues that First Reliance Standard's assumption that Dr. Grogan's response to its request was complete was in error. She argues that First Reliance Standard was obligated to determine whether Dr. Grogan had any additional documents that were not provided, prior to issuing its final determination. Third, plaintiff argues that First Reliance Standard's issuance of a determination, when the last record received from Dr. Grogan indicated that plaintiff would be seen again for follow-up in 3 months. The implication being, as long as plaintiff is under the care of a physician, First Reliance Standard cannot enter a final determination.

There is no authority for plaintiff's argument that First Reliance Standard did not have authority to obtain additional medical records and that its continued investigation of the claim was an procedural irregularity. Plaintiff had a continuing obligation to demonstrate disability, as defined within the policy. Her continued ability to receive benefits was contingent on her ability to show disability. First Reliance Standard has the duty to make a determination as to whether she remained entitled to benefits. Its request

for and review of her medical records was not a procedural irregularity, but rather a proper exercise of its discretion.

In her second argument, plaintiff attempts to shift the burden to First Reliance Standard and argues that First Reliance Standard's failure to accept the shift is a procedural irregularity. The burden of producing proof of total disability belongs to plaintiff. If she believed that additional medical documentation would have supported her claim, then she should have produced it. Under *Pinto v. Reliance Standard Life Ins. Co.*, the authority that established the sliding scale approach to implicitly conflicted administrators, the Court noted that its "focus on process should not be read to require an additional duty to conduct a good faith, reasonable investigation. That is, we are not holding that Reliance Standard had a duty to gather more information, merely that the decision might have been arbitrary and capricious given the information available." 214 F.3d 377, 394 n. 8.

Based on *Pinto*, there is no merit to plaintiff's third argument that First Reliance Standard had a duty to seek additional documentation from Dr. Grogan, namely, the June 5, 2000 medical record. Nonetheless, First Reliance Standard did conduct a proper investigation, requesting plaintiff's medical records from Dr. Grogan. The March 6, 2000 report that First Reliance Standard received from Dr. Grogan in response to its request for plaintiff's medical records supported its determination to discontinue benefits. The mere fact that plaintiff was scheduled for a follow-up did not mean that First Reliance Standard could not render an opinion as of March 6, 2000, especially when the medical records revealed that plaintiff was no longer disabled as of that date and when the policy contained a recurrent disability provision which would allow plaintiff to

returned to disabled status if she returned to work and her condition later regressed to a disabled state. Indeed, the definition of total disability within the policy is not contingent on the fact that the claimant is under the care of a physician. It is contingent on the claimant's ability to demonstrate disability. Countless people are under the care of a physician but are not totally disabled. Therefore, First Reliance Standard's actions were not erroneous and do not require a reduction in the level of discretion granted to the company.

III.   Conclusion

Based on the arguments contained herein, as well as oral arguments previously made to this Court and First Reliance Standard's Motion for Summary Judgment (Dkt. No. 13), Response to Plaintiff's Cross Motion for Summary Judgment (Dkt. No. 16), Response to Plaintiff's Supplemental Brief (Dkt. No. 20) and its Motion in Limine (Dkt. No. 27), this Court should determine that the First Reliance Standard did not act under the influence of the implied conflict of interest, that its review process was not plagued by self interest, procedural irregularities or bias and that the standard of review will rest toward that end of the sliding scale that will leave great deference with the determination of First Reliance Standard.

RAWLE & HENDERSON, LLP

By:_____/s/_____
   Joshua Bachrach, Esquire
   Heather J. Holloway, Esquire
   One South Penn Square
   Suite 1600
   Philadelphia, PA 19103
   Attorneys for Defendants

Date: December 21, 2004