IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTEN SMALL, | : CIVIL ACTION |
| | : |
| | : DOCKET NO. 02-CV-3744 |
| v. | : |
| | : |
| FIRST RELIANCE STANDARD | : |
| LIFE INSURANCE COMPANY; | : |
| E.M. INDUSTRIES, INC., AND | : |
| E.M. SCIENCE | : |

DEFENDANTS' PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

Defendants, First Reliance Standard Life Insurance Company, E.M. Industries, Inc. and E.M. Science, by and through their undersigned counsel hereby submit their Proposed Findings of Fact and Conclusions of Law.

FINDINGS OF FACTS

1.  The Administrative Record in this case consist of 280 pages (previously bates labeled as RSL001-RSL280[1]).

2.  First Reliance Standard provided long term disability coverage to eligible employees of EM Industries, Inc. under group policy No. LSC 063591. (RSL 111).

3.  The policy defines "Total Disability" as follows:

    "Totally Disabled" and "Total Disability" mean, with respect to Class II and III, that as a result of an Injury or Sickness:

---

[1] All "RSL" references are to the Administrative Record, which was marked and introduced into evidence by plaintiff during the December 14, 2004 trial of this matter.

1073537 v.1

> (1) During the Elimination Period and for the first 60 months for which a monthly benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
>
> (a) "Partially Disabled" and "Partial Disability" mean that as a result of Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is partially disabled will be considered totally disabled, except during the elimination period;
>
> (b) "Residual Disability" means being partially disabled during the elimination period. Residual Disability will be considered Total Disability; and
>
> (2) After a monthly benefit has been paid for 60 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the insured's education, training or experience will reasonably allow. We consider the Insured "Totally Disabled" if due to an Injury or Sickness. He or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.

(RSL 116).

4. Plaintiff was employed by EM Industries, Inc. as a Technical Web Specialist until December 1, 1998 when she claims that she became totally disabled. (RSL 145).

5. On her claim form Ms. Small stated that she was disabled due to "hypersomnia and periodic leg disorder movement." (RSL 145).

6. In support of the disability claim, plaintiff provided First Reliance Standard with a Physician's Statement completed by Wendell A. Grogan, M.D. on June 3, 1999. (RSL 150-151).

7. Dr. Grogan diagnosed plaintiff as having periodic limb movements at sleep and hypersomnia. (RSL 150).

8. Dr. Grogan described the symptoms plaintiff was experiencing due to these conditions as "severe sleepiness, non-restorative sleep." (RS 150).

9. On the Physician's Statement completed by Dr. Grogan, he stated that in an 8 hour work day, plaintiff was capable of sitting, standing and walking for 1 to 3 hours each. (RSL 151).

10. Dr. Grogan indicated on the form that in an 8 hour day, plaintiff was capable of lifting and carrying at a sedentary level. (RSL 151).

11. Dr. Grogan stated that plaintiff had not achieved maximum medical improvement; however, he believed that plaintiff would achieve this level of improvement within twelve months. (RSL 151).

12. Dr. Grogan stated that at the time of maximum medical improvement, plaintiff would be fully recovered. (RSL 151).

13. After receiving and reviewing medical records pertaining to Ms. Small, on January 13, 2000, First Reliance Standard notified plaintiff that her claim for benefits was approved through June 3, 1999. (RSL 74-75).

14. On February 11, 2000, plaintiff requested a review of First Reliance Standard's decision to discontinue benefits after June 3, 1999. (RSL 68-69).

15. In support of her appeal, plaintiff provided First Reliance Standard with a February 2, 2000 report from Dr. Grogan who stated that plaintiff's "night time sleep has become much better." (RSL 72).

16.   Dr. Grogan also stated that plaintiff "no longer experience[s] the degree of sleep disruption that was seen before starting medications." (RSL 72).

17.   Dr. Grogan explained that Ms. Small continued to have "severe daytime sleepiness." (RSL 72).

18.   Based on the daytime sleepiness, Dr Grogan recommended that plaintiff not work "until we can make more inroads into the familial hypersomnia syndrome." (RSL 72).

19.   On February 2, 2000, the same date on which Dr. Grogan prepared his letter to plaintiff, he sent a report to Dr. Pileggi. (RSL 45).

20.   Dr. Grogan stated that plaintiff's therapy was "successful" in allowing her to "sleep soundly through the night" from 10:00 p.m. to 8:00 a.m. (RSL 45).

21.   Dr. Grogan started plaintiff on Adderall and asked her to follow-up in a month to review her treatment. (RSL 45).

22.   Dr. Grogan's report from Ms. Small's visit on March 6, 2000, confirms that the additional medication significantly improved plaintiff's remaining symptoms. (RSL 43).

23.   Dr. Grogan's report states:

> I had the pleasure of seeing your patient, Kristen Small, for follow up today. She tells me that on the Adderall 5 mg. that she is able to stay awake from about 7:00a.m. to 8:00p.m. generally feels alert during that time period but that [sic] skips taking the medications on Sundays and on that day she takes about a four hour nap in the afternoon. She awakens with a great deal of sleep inertial but then is able to function till about 8:00p.m. when she goes to bed. She usually goes to bed at 8:00p.m. and gets up at 7:00a.m. The Clonopin continues to keep her other symptoms under control.

> On examination today, she has a blood pressure of 120.180 and a pulse of 70 and is otherwise doing well.
> My impression is that she is tolerating these medications and it is again my hope that by normalizing her sleep cycles for a period of time we will be able to sustain that effect without medication in the future. Because of this, I have asked her to see me in follow up in three months time so that we can review her response.

(RSL 43).

24. On May 22, 2000, Dr. Grogan completed the form at the request of First Reliance Standard and he stated that plaintiff was *continuously* capable of sitting, standing, walking and performing various other activities described on the form in an 8 hour work day. (RSL 57).

25. Approximately one year earlier when he completed a similar form, Dr. Grogan stated that plaintiff could only stand, sit, walk and drive for one to three hours each in an 8 hour work day. (RSL 27).

26. On May 22, 2000, Dr. Grogan stated that plaintiff was now capable of exerting herself at a light level. (RSL 57).

27. According to Dr. Grogan, she should "never" drive. (RSL 57).

28. Plaintiff's occupation did not involve driving. (RSL 160).

29. On June 21, 2000, First Reliance Standard responded to plaintiff's appeal. (RSL 32).

30. First Reliance Standard informed plaintiff that based on the additional information, it was reversing its earlier decision that plaintiff was not entitled to benefits beyond June 3, 1999. (RSL 32).

31. Based on the reports from Dr. Grogan, First Reliance Standard concluded that additional benefits would be payable through March 6, 2000, the date of Dr. Grogan's report. (RSL 34).

32. The policy states that a monthly benefit will only be paid when a claimant "submits satisfactory proof of Total Disability to [First Reliance Standard]." (RSL 122).

33. Plaintiff is not totally disabled beyond March 6, 2000.

34. First Reliance Standard's decision is supported by substantial evidence.

## CONCLUSIONS OF LAW

1. The policy states that a monthly benefit will only be paid when a claimant "submits satisfactory proof of Total Disability to [First Reliance Standard]." (RSL 122). This language sufficiently grants discretionary authority to First Reliance Standard. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 379 (3d Cir. 2000).

2. The heightened arbitrary and capricious standard of review applies to the decision to discontinue benefits. *See Pinto*, 214 F.3d at 389.

3. While the court may look to outside evidence on whether there is a conflict of interest, in reviewing the decision of the Plan the court may only look to the record which "consists of that evidence that was before the administrator when he made the decision being reviewed." *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997). *See also Kelly v. Connecticut General Life Insurance Company*, 2003 WL 22795648 (E.D. Pa. 2003) (refusing to consider the ruling from the Social Security Administration which was made after the defendant affirmed the denial of benefits and which was not contained in the administrative record).

4.  In considering extrinsic evidence to determine the applicable standard of review, the nature of the evidence that may be considered is limited and excludes medical opinions not contained within the file, and explanations supplementing earlier medical reports. *See O'Sullivan v. Metropolitan Life Ins. Co.*, 114 F.Supp. 2d. 303 (D.N.J. 2000). *See also Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 41 (3d Cir. 2003); *Kelly v. Connecticut General Life Insurance Company*, 2003 WL 22795648 (E.D. Pa. Nov. 7, 2003); *Pinto*, 214 F.3d at 392 (3d. Cir. 2000; *Mitchell*, 113 F.3d at 440 (3d Cir. 1997).

5.  As a matter of law, First Reliance Standard's decision is supported by substantial evidence.

6.  Claimant's inability to commute to and from work does not make her eligible for disability benefits. *See McMahon v. Digital Equipment Corp., Inc.*, 162 F.3d 28, 40 (1st Cir. 1998); *Chandler v. Underwriters' Labs, Inc.*, 850 F. Supp. 728, 736 (N.D. Ill. 1994); *Schneider v. Continental Cas. Co.*, No. 95 C. 1820, 1996 U.S. Dist. LEXIS 19631 at 24 (N.D. Ill. Jan. 7, 1997).

7.  It is plaintiff's burden to prove her eligibility for benefits. *See Mitchell*, 113 F.3d at 439; *Abnathya v. Hoffman-La Rouche, Inc.* 2 F.3d 40, 46 (3rd Cir. 1993).

8.  Plaintiff did not demonstrate continued total disability while her condition was in remission based on the mere fact that she may one day be disabled by a flare-up of the same condition. *See* Recurrent Disability policy provision. (AR123). *See also e.g. Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793 (8th Cir. 2002); *Goodman v. Provident Life & Accident Ins. Co.*, 250 F. 3d 329 (5th Cir. 2001); *Galman v. The Prudential Ins. Co. of America*, 254 F.3d 768 (8th Cir. 2001).

9. The determination of the Social Security Administration is not binding on Reliance Standard. *See e.g. Black & Decker Disb. Plan v. Nord*, 123 S.Ct. 1965 (2003). *See also Cook v. Liberty Life Assurance Co.*, 320 F.3d 11, 16 n.5 (1st Cir. 2003); *Leahy v Raytheon Co.*, 315 F.3d 11 (1st Cir. 2002); *Riedl v. Gen. American Life Ins. Co.*, 248 F.3d 753, 759 n.4 (8th Cir. 2001); *Chandler v. Raytheon Employees' Disability Trust*, 53 F.Supp.2d 84 (D. Mass. 1999), aff'd 2000 W.L. 800 788 (1st Cir. 2000); *Elliott v. Sara Lee Corporation*, 190 F.3d 601, 607 (4th Cir. 1999); *Paramore v. Delta Airlines, Inc.*, 129 F.3d 1446, 1452 n.6 (11th Cir. 1997); *Pagan v. NYNEX Pension Plan*, 846 F.Supp. 19, 20 (S.D. N.Y. 1994), aff'd, 52 F.3d 438 (2d Cir. 1995); *Anderson v. Operative Plasterers' & Cement Mason's Int'l. Assoc.*, 991 F.2d 356 (7th Cir. 1993); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1286 (9th Cir. 1990).

10. As a matter of law, Reliance Standard's determination was not arbitrary and capricious.

11. Plaintiff failed to meet her burden of demonstrating total disability beyond March 6, 2000.

RAWLE & HENDERSON LLP

BY: _____/s/_____
Joshua Bachrach, Esquire
Heather J. Holloway, Esquire
*Attorneys for Defendants*
One S. Penn Square, 16th Floor
The Widener Building
Philadelphia, PA 19107

Date: December 23, 2004