IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

KRISTEN SMALL                                 :
                                              :
   vs.                             :        CIVIL ACTION
                                              :
FIRST RELIANCE STANDARD LIFE   :        NO. 02-CV-3744
INSURANCE COMPANY, et al.         :
_____ :

### PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION FOR RECONSIDERATION

    Plaintiff, Kristen Small, though counsel, hereby responds to defendant's Motion for Reconsideration and respectfully requests that this Court deny the motion. Plaintiff repeats and incorporates by reference the accompanying Memorandum of Law as if set forth at length herein.

    WHEREFORE, plaintiff Kristen Small respectfully requests that this Court deny defendant's Motion.

**LAW OFFICES OF VINCENT F. PRESTO**

By: _____
    VINCENT F. PRESTO, ESQUIRE
    124 Chestnut Street
    Philadelphia, PA 19106
    (215) 922-7000
    Attorneys for Plaintiff

```
IN THE UNITED STATES DISTRICT COURT
  FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____
TEN SMALL                        :
                                 :
   vs.                           :     CIVIL ACTION
                                 :
FIRST RELIANCE STANDARD LIFE     :     NO. 02-CV-3744
INSURANCE COMPANY, et al.        :
_____   :
```

## PLAINTIFF'S MEMORANDUM OF LAW

I. PROCEDURAL HISTORY

This is a claim arising under the Employee Retirement Security Act ("ERISA") in which plaintiff sought a review by this Court of defendant's benefit decision denying her long term disability benefits. In a decision and Order dated February 28, 2005, entered March 2, 2005, this Court found that defendant's denial was arbitrary and capricious and entered judgment in plaintiff's favor. On March 11, 2005, defendant filed a Motion for Reconsideration asking that this Court reverse itself and uphold the denial decision. For the reasons that follow, defendant's motion is without merit. Accordingly, it should be denied.

II. THE STANDARD

The trial court has the authority to reconsider its rulings to correct manifest errors of law or fact or to consider newly discovered evidence. Harsco Corp vs. Zlotnicki, 779 F.2d 906 (3d Cir. 1985) *cert. denied,* 476 U.S. 1171 (1986). Mere dissatisfaction with the court's decision is not enough to justify a reconsideration request Capital Funding, VI, L.P. vs. Chase Manhattan Bank USA, Civil Action No.: 01-6093 (Davis J.) E.D. Pa. February 11, 2005 (05d0216p.pdf). The court may consider three scenarios: (a) intervening change in controlling law; (b) availability of new evidence not previously available; (c) need to correct a clear error of law or prevent manifest injustice. Harsco *supra.* None of these criteria apply instantly.

III. ARGUMENT

    1. The June 6, 2000 report

Defendant argues that the Court's decision is erroneous because the Court imposed a duty upon defendant "gather evidence" that does not exist under controlling ERISA precedent. (Defendant argues: "It appears the

Court believed that the June 5, 2000 report was evidence of a conflict of interest since the report existed at the time of Reliance Standard's final decision but Reliance Standard did not obtain the report from Dr. Grogan").

This court did not find a conflict of interest due to defendant's failure to "gather" additional evidence. To the contrary, the Court found in part that defendant's decision was predicated upon selective use of existing medical evidence. In particular, the Court aptly observed: "Small was under Dr. Grogan's care throughout the application process, from January 13, 1999 through June 21, 2000, the day her appeal was denied. Dr. Grogan assessed Small's condition at least ten times and repeatedly opined that she was having significant sleeping problems." *Mem. and Order at 9*. The Court then went on find that defendant placed greater emphasis on the March 6, 2000 report and proceeded to summarize the course of care, clinical findings, through that date, using the June 5, 2000 note as corroboration that claimant's condition remained disabling throughout her course of care. The Court did not rely on the June 5, 2000 report to find that defendant's decision was arbitrary and capricious because it did not obtain it.

Moreover, the Court's observation that the June 5, 2000 record was indeed *available* to defendant prior to its June 21, 2005 medical review and claim denial should be read in the context of the other facts before the Court which, as a whole, demonstrate an unfair and irregular claim process. The facts include:

- Even though the policy and procedures manual does not authorize an administrator to undertake additional record gathering on appeal, Ms. Winston justified her decision to do so by pointing out that the medical department had requested that she obtain additional records and accordingly she was permitted to follow the medical department's direction. However, at RSL 65, the May 18th, 2000 note from nurse Finigan directed that Winston "obtain results of sleep study and office notes from 8/99 to present for review". Winston did not merely obtain the records that Finigan directed. Indeed, she forwarded and requested that Dr. Grogan complete a Physical Capacities Assessment. (RSL 57-59) Winston repeatedly testified that she relied on the PCA in part to deny the claim. *Even under Winston's own justification, there was no authority for her to seek or obtain a PCA, since this was not requested by the medical department.*

- It is crystal clear from the March 6, 2000 office note that Winston was aware that claimant was still

3

under Dr. Grogan's care and the he instructed her to return to the office in three months' time, i.e., June of 2000. Indeed, Winston even quoted that portion of the March 6, 2000 report in her June 21, 2000 denial letter. Despite this knowledge, the fact that the medical department directed that she obtain all office notes through to the "current", that the June 5, 2000 note existed before the June 21, 2000 medical review and denial, Winston did not request or obtain it.

- Winston directed that claimant be contacted to ascertain return-to-work status, but only *after* she denied the claim, learning from claimant *after* she denied the claim, but for some reason not before she denied the claim, that the meds only worked for one month. (RSL 30).

- Defendant's only communication to claimant after the appeal was acknowledged but before the denial was issued – its May 22, 2000 letter (RSL 64) -- makes false and misleading statements in three material respects. First, defendant advised: "The review will …determine if additional investigation is necessary in order to determine your eligibility for benefits under the group policy". This statement is false and misleading because, as of May 18th, 2000 Winston had already been advised that additional investigation was necessary, and she herself had already sent a request on May 19th to Dr. Grogan for information. (RSL 60-62). This statement does not correctly and accurately advise claimant that a decision had already been made to gather more medical information or advise her what information was requested. Indeed, it suggests that such determination had yet to be made.

- Secondly, the letter advised that defendant "will be contacting you in the near future with an update or to inform you if additional information will be required". (RSL 64). Indeed, defendant did not contact claimant with an update or inform her that additional information was required. Because of defendant's failure in this regard, claimant was absolutely denied any opportunity to know precisely what information defendant had already gathered from Dr. Grogan, or an opportunity to supplement the record with any missing or additional information.

- Lastly, defendant specifically advised claimant that *defendant* was awaiting additional information and medical records from Dr. Grogan. Here, claimant had no reason to know that the June 5, 2000 record would not have been included in the materials to be received by defendant.

The presence or absence of the June 5, 2000 report from the administrative record is striking similar to the factual situation in Friess vs. Reliance Standard Life Insurance Co., 122 F. Supp.2d 566 (E.D. Pa 2000). There, Judge Brody found that Reliance's attempt to contact one of the treating doctors and obtain his records, made it reasonable for the claimant to believe that Reliance had obtained the records on its own. Having failed to obtain the records, "Reliance may have lacked adequate medical information on the crucial period of time immediately following Friess's May 1994 injury". Id. at 574. The same is true in this case. Under the above circumstances, claimant's failure to submit the June 5, 2000 record is more-than-reasonable. Moreover, given Winston's testimony that she believed that the June 5, 2000 record reported claimant's medical condition in a manner that was different than how it was reported in the March 6, 2000 record, and accordingly, she would have sought further clarification, defendant plainly "lacked adequate medical information on the crucial period of time" to render a fair, complete, and impartial decision. Much like Judge Brody, this Court did not conclude that defendant had a duty to "seek out" medical information.

2.   Material Duties

Defendant next argues that the Court "substituted its own judgment for that of defendants". Defendant argues three points, first that the February 2, 2000 indicated that claimant was improved; secondly, that the March 6, 2000 note indicated that claimant had improved even further, and; thirdly, that the Physical Capacities Assessment that Dr. Grogan completed in May of 2000 confirmed that the "improvements" documented in the March 6, 2000 note were not temporary. Each of these arguments lacks merit.

First, defendant fails to acknowledge, much less reconcile, Dr. Grogan's note of February 2, 2000 verifying Ms. Small's continued disability (RSL 44). In short, if defendant is correct in its interpretation of Dr. Grogan's clinical note of 2/2/00 that claimant was improving, why did Dr. Grogan himself continue with his opinion of disability? Moreover, it is significant that defendant's medical review concluded that claimant was improved to the point of being able to return to work as of 2/2/00 (RSL 36), yet Dr. Grogan himself continued with an opinion of disability. Apparently, even Ms. Winston felt the medical department's determination on this issue was suspect because Ms. Winston disagreed and continued benefits to March 6, 2000.

Secondly, the March 6, 2000 note does not evince claimant's ability to return to work. Indeed, the note

itself advises that claimant remained on new medications, that she was scheduled for a follow-up visit in three months time to review her response, and that she continued with a great deal of sleep inertia. (RSL 43). Nowhere in the record does Dr. Grogan advise that claimant is released to return to work.

Finally, the May 2000 Physical Capacities Statement does not reflect that the "improvements" noted in March were not temporary. The last visit Ms. Small had with Dr. Grogan before he completed the May 22, 2000 PCA was March 6, 2000. The PCA form was not predicated upon an office visit or examination in May of 2000 and, thus, is *not* evidence of on-going improvement. Ms. Winston acknowledged in her court testimony that she understood that the PCA *did not* report information as of May 22, 2000, but rather, as of March 6, 2000. Defendant's present argument directly conflicts with the administrator's own testimony.

Finally, defendant tries to cloud its complete failure to make any assessment of claimant's ability to perform the material duties of her position by arguing that claimant did not prove that she had any difficulties performing the technical aspects of her position. The administrative record is replete with evidence that Ms. Small's medical condition affected her in ways other than performing physical activities. Dr. Grogan's October 18, 1999 note states that: "In terms of work restrictions, the fact that you have this persistent hypersomnia makes it difficult for me to see how you could engage in any full-time job. *This would be especially difficult if there were any technical or hazardous materials involved in your work.*" (RSL 48). The PCA completed by Dr. Grogan in May of 2000 noted a total restriction from any driving whatsoever. (RSL 57). In addition, the administrative file also reflects interview notes which state: "When claimant is up during day, claimant just sits and stares. Brain is not fully awake". (RSL 19).

It is submitted that the above information, in combination with absolutely no assessment of the technical duties of claimant's position, suffices to render the denial decision arbitrary and capricious.

For all of the above reasons, it is respectfully submitted that this Court should deny defendant's motion for reconsideration.

**LAW OFFICES OF VINCENT F. PRESTO**

By: _____
   VINCENT F. PRESTO, ESQUIRE
    124 Chestnut Street

Philadelphia, PA 19106
(215) 922-7000
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I, Vincent F. Presto, Esquire, hereby certify that I served a true and correct copy of Plaintiff's Opposition to Defendant's Motion for Reconsideration upon the person(s) set forth below on the date indicated via United States regular mail.

Heather Holloway, Esquire
RAWLE & HENDERSON, L.L.P.
The Widener Building
One South Penn Square
Philadelphia, PA 19107

_____
VINCENT F. PRESTO, ESQUIRE

Date:  _____